# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

CRUDE SOLUTIONS LTD.,

    *Plaintiff*,

v.

CENOVUS ENERGY INC., CENOVUS ENERGY MARKETING SERVICES LTD., and MEG ENERGY CORP.

    *Defendants*.

**CIVIL ACTION NO.**

**JURY TRIAL DEMANDED**

## PLAINTIFF'S ORIGINAL COMPLAINT

1. Plaintiff Crude Solutions Ltd. ("CSL" or "Plaintiff"), by and through its undersigned counsel, files this Original Complaint for patent infringement against Defendants Cenovus Energy Inc. (for its own infringement and as successor-in-interest to MEG Energy Corp.), MEG Energy Corp., and Cenovus Energy Marketing Services Ltd. (collectively, "Defendants"), alleging as follows:

## NATURE OF THE ACTION

2. This is a civil action for infringement of U.S. Patent Nos. 9,551,207 (the "'207 Patent"), 10,392,912 (the "'912 Patent"), and 10,927,655 (the "'655 Patent") (collectively, the "Asserted Patents"), arising under the Patent Laws of the United States, 35 U.S.C. §§ 271 *et seq*.

3. The Asserted Patents disclose and claim methods of producing oil from oil sand reservoirs using steam-assisted gravity drainage ("SAGD") well pairs in combination with infill wells that are activated prior to steam chamber merger. The inventions represent a pioneering advance in heavy oil recovery techniques that significantly improve the efficiency and economics of in-situ bitumen production.

4. Defendants manufacture unrefined heavy crude oil products at the Christina Lake industrial facility, utilizing the proprietary Steam-Assisted Gravity Drainage ("SAGD") with pre-merger infill well activation methods claimed in the Asserted Patents. Defendants subsequently import, sell, offer for sale, and/or use these unrefined crude oil products—specifically including Christina Dilbit Blend ("CDB") and Access Western Blend ("AWB")—within the United States and within this Judicial District in direct violation of 35 U.S.C. § 271(g). CSL brings this action to recover damages for Defendants' infringement and to obtain injunctive relief.

## THE PARTIES

5. Plaintiff Crude Solutions Ltd. is a corporation organized under the laws of Alberta, Canada, with its principal place of business at 503 Lougheed Court NW, Edmonton, AB T6R2T3, Canada. CSL is a research and development company that has pioneered innovations in SAGD techniques for the recovery of bitumen from oil sand reservoirs.

6. CSL is the owner of all rights, title, and interest in and to the Asserted Patents, including the sole and exclusive right to enforce the Asserted Patents and to sue for and recover damages for past, present, and future infringement. The named inventor of each of the Asserted Patents is Jason Swist.

7. CSL and any prior owners of the Asserted Patents have complied with the marking and notice requirements of 35 U.S.C. § 287, to the extent any such requirements apply. On information and belief, no products of CSL or any prior owner of the Asserted Patents practice the Asserted Patents such that marking would be required, and in any event CSL provides constructive notice of the Asserted Patents through this Complaint.

8. On information and belief, Defendant Cenovus Energy Inc. ("Cenovus Parent") is a Canadian corporation with its principal headquarters at 225 6 Ave SW, Calgary, Alberta, Canada.

Cenovus Parent is an integrated energy company. On or about November 13, 2025, Cenovus Parent completed a formal corporate acquisition of MEG Energy Corp. Based on information and belief, Cenovus Parent acquired all assets, operational controls, and patent liabilities of MEG Energy Corp., and actively directs the infringing production at the facilities described herein. Cenovus Parent may be served through its registered corporate channels or via the Hague Convention.

9.    Defendant MEG Energy Corp. ("MEG") is an Alberta corporation with its principal place of business in Calgary, Alberta, Canada. Based on information and belief, following its acquisition, MEG operates as a wholly-owned subsidiary of Cenovus Parent. MEG is the direct historical and ongoing operator of the Christina Lake facility. MEG may be served through its registered corporate office or via the Hague Convention.

10.    Defendant Cenovus Energy Marketing Services Ltd. ("Cenovus Marketing") is a corporate subsidiary directed and controlled by Cenovus Parent. Based on information and belief, Cenovus Marketing acts as the primary shipper, marketing intermediary, and/or Importer of Record responsible for executing the physical transport, customs clearance, and commercial sale of the accused crude oil streams into the United States.

11.    On information and belief, Cenovus Parent dominates and controls the relevant operations of MEG and Cenovus Marketing such that those subsidiaries act as the agents and alter egos of Cenovus Parent with respect to the conduct at issue. Following its November 13, 2025 acquisition of MEG, Cenovus Parent assumed control over the Christina Lake operations; directs and approves the production methods and the capital and operating decisions for those operations; and directs the marketing, transportation, importation, and sale of the resulting crude oil streams into the United States, including through Cenovus Marketing. Cenovus Parent and its subsidiaries share common management and centralized control and hold themselves out to the public as a

3

single integrated enterprise operating under the "Cenovus" name. The acts of MEG and Cenovus Marketing alleged herein are therefore attributable to Cenovus Parent, and Cenovus Parent is subject to the jurisdiction of this Court on the basis of those contacts with the United States and this forum

12.    On information and belief, MEG and/or Defendants have 100,000 barrels per day of contracted AWB transportation capacity on pipeline systems providing pipeline transportation directly to U.S. Gulf Coast ("USGC") refineries and export terminals. Defendants import, offer to sell, sell, and use in the United States the product made by a patented process—namely, bitumen produced using the methods claimed in the Asserted Patents, blended with diluent for pipeline transport as AWB.

13.    Defendants are alien corporations under the laws of the United States and may be sued in any judicial district under 28 U.S.C. § 1391(c)(3).

## JURISDICTION AND VENUE

14.    This action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.,* including §271(g). The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

15.    This Court has personal jurisdiction over Defendants pursuant to the Texas Long Arm Statute, Tex. Civ. Prac. & Rem. Code § 17.042, and consistent with Fed. R. Civ. P. 4(k)(1) and 4(k)(2) and with the requirements of constitutional due process. Without limitation, Defendants have purposefully directed activities at residents of the State of Texas and this District by importing, selling, offering to sell, and using the product of a patented process in Texas, and by entering into contracts with Texas-based companies for the distribution, refining, and sale of AWB and other hydrocarbon products derived from Defendants' infringing operations.

16.     On information and belief, Defendants maintain systematic and continuous contacts with the State of Texas through business relationships with refineries in Texas, contractual arrangements for pipeline delivery of AWB to USGC refineries and export terminals (including terminals and refineries in this District and the State of Texas), and their derivation of substantial revenue from the sale of products derived from the claimed methods of the Asserted Patents in Texas.

17.     Defendants have purposefully availed themselves of the privileges of conducting business within the State of Texas by, among other things, importing the product of a patented process into established U.S. distribution channels with the expectation that such products will be sold and refined in Texas; entering into pipeline transportation contracts and offtake agreements for the delivery of AWB to Texas refineries; and deriving substantial revenue from goods provided to purchasers in Texas and this District.

18.     Venue is proper in this District under 28 U.S.C. §§ 1400(b) and 1391(c)(3). Defendants are alien corporations under the laws of the United States and are not resident in any State and may therefore be sued in any judicial district in which personal jurisdiction exists. 28 U.S.C. § 1391(c)(3). Additionally, a substantial part of the events or omissions giving rise to the claims in this action occurred in this District, including the importation, sale, offer to sell, and use of infringing products within this District.

## THE ASSERTED PATENTS

19.     The United States Patent and Trademark Office ("USPTO") duly and legally issued the '207 Patent, titled "Pressure Assisted Oil Recovery," on January 24, 2017. The '207 Patent was filed on February 13, 2012, and claims the benefit of U.S. Provisional Application No. 61/487,770, filed May 19, 2011. The named inventor is Jason Swist. CSL is the owner, by assignment, of all

rights, title, and interest in the '207 Patent, with the full and exclusive right to bring suit to enforce the '207 Patent, including the right to recover for past infringement. A true and accurate copy of the '207 Patent is attached as **Exhibit A**.

20.     The USPTO duly and legally issued the '912 Patent, titled "Pressure Assisted Oil Recovery," on August 27, 2019. The '912 Patent is a continuation of Application No. 13/371,729 (which matured into the '207 Patent) and claims the benefit of U.S. Provisional Application No. 61/487,770, filed May 19, 2011. The named inventor is Jason Swist. CSL is the owner, by assignment, of all rights, title, and interest in the '912 Patent, with the full and exclusive right to bring suit to enforce the '912 Patent, including the right to recover for past infringement. A true and accurate copy of the '912 Patent is attached as **Exhibit B**.

21.     The USPTO duly and legally issued the '655 Patent, titled "Pressure Assisted Oil Recovery," on February 23, 2021. The '655 Patent is a continuation of Application No. 15/395,428 (which matured into the '912 Patent) and claims the benefit of U.S. Provisional Application No. 61/487,770, filed May 19, 2011. The named inventor is Jason Swist. CSL is the owner, by assignment, of all rights, title, and interest in the '655 Patent, with the full and exclusive right to bring suit to enforce the '655 Patent, including the right to recover for past infringement. A true and accurate copy of the '655 Patent is attached as **Exhibit C**.

22.     The Asserted Patents all share a common patent family and claim priority to U.S. Provisional Application No. 61/487,770, filed May 19, 2011. The Asserted Patents collectively contain 56 claims directed to methods of producing oil from oil sand reservoirs using SAGD well pairs in combination with infill wells activated prior to steam chamber merger.

## BACKGROUND FACTS

23.     Steam-Assisted Gravity Drainage ("SAGD") is the predominant in-situ extraction technology for recovering bitumen from deep oil sand deposits that cannot be economically surface-mined. In a conventional SAGD operation, pairs of parallel horizontal wells are drilled into an oil sand reservoir: an upper injection well and a lower production well. Steam is injected through the upper well, creating a "steam chamber" that heats the surrounding bitumen, reducing its viscosity and allowing it to flow by gravity to the production well below.

24.     As a SAGD operation matures, the steam chambers from adjacent well pairs grow laterally and eventually merge. Prior to the inventions claimed in the Asserted Patents, the industry practice was to wait until adjacent steam chambers had merged before considering additional recovery techniques between the well pairs.

25.     The Asserted Patents represent a fundamental breakthrough in SAGD operations. The inventor, Jason Swist, recognized that significant economic value could be recovered by activating infill wells *prior to* steam chamber merger—not after. This timing distinction is critical and distinguishes the Swist patents from prior art approaches such as Arthur (which requires activation only after merger).

26.     Generally, the Asserted Patents describe methods of producing oil from oil sand reservoirs using two SAGD well pairs with an infill well drilled between them. Steam is injected into the SAGD well pairs to create zones of increased mobility. An infill well is drilled between the two SAGD well pairs. A second fluid (such as steam) is injected into the infill well to establish thermal communication prior to merger of the steam chambers from the adjacent SAGD well pairs. The infill well is then converted to produce reservoir fluids. This approach allows operators to recover bitumen from the "dead zone" between well pairs earlier and more efficiently.

27.     On information and belief, Defendants employ Enhanced Modified Steam and Gas Push ("EMSAGP") and eMVAPEX methods at least in their Christina Lake Project.[1] Defendants utilize SAGD well pairs with infill wells placed in strategic spots between producing SAGD well pairs. Defendants inject approximately 1,000 to 4,000 m³ of steam into their infill wells before commencing production—that is, prior to steam chamber merger. On information and belief, Defendants' own patent (U.S. Patent No. 10,145,226) describes the activation of additional producer wells before steam chambers merge, which is the same fundamental concept claimed in the Asserted Patents.

28.     The bitumen produced by Defendants' infringing SAGD operations is blended with diluent to create AWB, which is transported via pipeline systems directly to USGC refineries and export terminals. This blending does not constitute a material change to the product of the patented process within the meaning of 35 U.S.C. § 271(g), as the bitumen remains the essential, commercially valuable component of the AWB product and the blending is merely necessary for pipeline transportation.

29.     The SAGD process practiced by Defendants does not merely extract a pre-existing product from the ground. Rather, the patented methods transform immobile, non-marketable reservoir bitumen—which exists in situ as a near-solid substance with viscosities exceeding one million centipoise at reservoir temperature—into a flowable, commercial-grade hydrocarbon through the controlled application of heat, pressure, and fluids at temperatures exceeding 200°C. This process effects permanent physical and chemical changes to the reservoir contents, including thermal cracking, viscosity reduction, asphaltene redistribution, and compositional alteration, resulting in a product that did not exist in marketable form prior to application of the patented

---

[1] *eMVAPEX Pilot, Phase 3,* Emissions Reduction Alberta, https://www.eralberta.ca/projects/details/emvapex-pilot-phase-3/ (last visited May 27, 2026).

process. The bitumen produced via the Asserted Patents' methods is thus a "product made by" the patented process within the meaning of 35 U.S.C. § 271(g). Upon arrival at U.S. refineries, the diluent added for transportation purposes is stripped, and the bitumen entering the refinery coker is chemically and physically identical to the bitumen produced via the patented process at the wellhead.

30.     Defendants have had knowledge of the Swist patent family, including the then-pending applications that later matured into the Asserted Patents since at least 2014, when Crude Solutions Ltd. and Jason Swist filed suit against MEG Energy for infringement of Canadian Patent No. CA2800746 in the Federal Court of Canada (Case No. T-1069-14). The Canadian patent is a member of the same patent family as the Asserted Patents. Over more than eight years of communications between the parties and their counsel, Defendants have been fully aware of the Swist patent portfolio and the likely infringement of said portfolio, including the U.S. patents asserted herein.

31.     In addition to the foregoing, on information and belief, Defendants and their predecessors have been on direct notice of the Swist patent portfolio since at least 2013 through repeated affirmative communications by the inventor, Jason Swist, and CSL. Beginning in 2013 and continuing through at least 2019, CSL sent multiple broadcast announcements to industry participants—including personnel at Cenovus and other major SAGD operators—notifying the industry of the issuance of patents in the "Pressure Assisted Oil Recovery" family and the availability of the technology for licensing. Swist also sent direct written communications to senior Cenovus executives, including members of Cenovus's technology leadership, advising them of the overlap between Cenovus's own patent filings and CSL's patent portfolio. In 2015, CSL sent a detailed written communication via registered mail to the CEO of Cenovus personally advising

9

him of the patent portfolio, the ongoing MEG Energy litigation, and a proposed licensing arrangement. In 2017, Swist engaged prominent Canadian counsel to facilitate licensing discussions directly with Cenovus. CSL also maintained a public website at www.crudesolutions.com on which each patent issuance and technology update was regularly posted and accessible to the industry, including Defendants. Despite these repeated and direct communications over many years, Defendants never sought a license or authorization from CSL.

32.　　In January 2017, CSL sent a broadcast email to industry participants—including Defendants—referencing the issuance of the '207 Patent. MEG's knowledge of the Asserted Patents is further evidenced by Defendants' own patent filings (e.g., U.S. Patent No. 10,145,226), which employ the same arguments and technical concepts that Swist relied upon to obtain his patents, demonstrating Defendants' intimate familiarity with the subject matter of the Asserted Patents.

33.　　As a result, Defendants have been on notice of their likely infringement of the Asserted Patents as defined by 35 U.S.C. §287(b).

## **ACCUSED FUNCTIONALITIES**

34.　　Defendants implement various SAGD-related extraction methods across their oil sands operations, including, without limitation, at the Christina Lake Project in the southern Athabasca oil sands region of Alberta, Canada. The methods and processes accused of infringing one or more of the Asserted Patents generally include, without limitation: Enhanced Modified Steam and Gas Push ("EMSAGP"), enhanced Modified Vapour Extraction ("eMVAPEX"), infill well drilling and activation between SAGD well pairs prior to steam chamber merger, injection of steam and non-condensable gas ("NCG") into infill wells to establish thermal communication, conversion of infill wells from injection to production prior to merger of adjacent steam chambers,

and the use of additional horizontal production wells activated before steam chambers from adjacent SAGD well pairs intersect or merge, as described in MEG's own patent filings and operational reports, including the Christina Lake Regional Project 2020/2021 Directive 54 Performance Report.[2]

**COUNT I**
**INFRINGEMENT OF THE '207 PATENT**

35.     CSL realleges and incorporates herein the preceding allegations of this Complaint as if fully set forth herein.

36.     The '207 Patent generally describes a method for extracting oil from oil sand reservoirs using pressure-assisted techniques, wherein two SAGD well pairs are drilled with an infill well positioned between them, and a fluid is injected into the infill well to establish thermal communication and generate a large singular zone of increased mobility prior to the merging of steam chambers from the adjacent SAGD well pairs, thereby recovering bitumen that would otherwise remain trapped between the well pairs.

37.     The '207 Patent is valid, enforceable, and directed to patent-eligible subject matter under 35 U.S.C. § 101. The claims of the '207 Patent recite specific, concrete methods of producing oil from oil sand reservoirs that are tied to particular physical processes and yield tangible results.

38.     CSL is the owner of the '207 Patent and has the sole and exclusive right to enforce the '207 Patent and to recover damages for past and ongoing infringement.

39.     By way of non-limiting example set forth below, Defendants' SAGD operations at the Christina Lake Project infringe at least Claim 1 of the '207 Patent. The description is based on

---

[2] MEG Energy Corp., *Christina Lake Regional Project: 2020/2021 Directive 054 Performance Report* (2021), https://static.aer.ca/prd/documents/oilsands/insitu-presentations/2021-athabasca-meg-christina-10773.pdf.

publicly available information, including Defendants' website, regulatory filings, and patent disclosures. A detailed claim chart mapping each element of the asserted claims to Defendants' infringing operations is attached as **Exhibit D**. CSL reserves the right to modify this description, including, for example, based on information about Defendants' operations that it obtains during discovery.

40.    Claim 1 of the '207 Patent recites:

*A method of extracting oil from an oil sand reservoir comprising:*

> *an initial step of drilling first and second well pairs separated by a predetermined separation, each well pair comprising: a first well within the oil sand reservoir; and a second well within the oil sand reservoir at a predetermined vertical offset to the first well, substantially parallel to the first well and at a predetermined lateral offset to the first well;*

> *a further step, prior to any production, of operating the first and second wells as a steam assisted gravity drainage (SAGD) well pair by selectively injecting a first fluid into at least the first well of each well pair according to a first predetermined schedule to create a zone of increased mobility within the oil sand reservoir; and*

> *drilling an infill well within the oil sand reservoir at a predetermined location between the first and second well pairs and generating a large singular zone of increased mobility between the well pairs by injecting a second fluid into the infill well according to a second predetermined schedule to establish thermal communication between the infill well and the zone between the SAGD well pairs prior to merging of steam chambers created by concurrent operation of adjacent SAGD well pairs; and*

> *the second predetermined schedule comprising converting the infill well for extracting reservoir fluids from the oil sand reservoir via the infill well; and*

> *continuing to operate the SAGD well pairs according to the first predetermined schedule.*

41.    On information and belief, Defendants have infringed and continue to infringe one or more claims of the '207 Patent under 35 U.S.C. § 271(g) by importing into the United States, or offering to sell, selling, or using within the United States, a product (bitumen/CDB/AWB) that

12

is made by a process patented in the United States, without the authorization of CSL. Specifically, Defendants perform the patented SAGD process—including the use of infill wells activated prior to steam chamber merger—at their Christina Lake Project in Alberta, Canada, and the resulting product (bitumen blended as AWB) is imported into the United States via pipeline for sale to and use by USGC refineries.

42.     The AWB and CDB imported by Defendants into the United States is not materially changed by subsequent processes before its importation. The blending of bitumen with diluent for the purpose of pipeline transportation does not constitute a material change within the meaning of 35 U.S.C. § 271(g). The bitumen component of AWB is the essential, commercially valuable product of Defendants' infringing extraction process, and blending with diluent is merely a necessary transportation step that does not alter the fundamental character or commercial identity of the product.

43.     The product made by the patented process does not become a trivial and nonessential component of another product.

44.     On information and belief, Defendants have also infringed and continue to infringe one or more claims of the '207 Patent under 35 U.S.C. § 271(g) by importing into the United States, offering to sell, selling, and/or using within the United States products (bitumen/CDB/AWB) made by the patented process. Defendants' acts of importation, offers to sell, sales, and use of the product made by the patented process within the United States constitute direct infringement under § 271(g).

45.     By engaging in the conduct described herein, Defendants have caused injury to CSL, and CSL has been damaged and continues to be damaged as a result thereof. Defendants are liable to CSL for infringement of the '207 Patent pursuant to 35 U.S.C. § 271.

13

46.    CSL has suffered and continues to suffer monetary damages as a result of Defendants' infringement of the '207 Patent and is entitled to a monetary judgment in an amount adequate to compensate CSL for Defendants' infringement pursuant to 35 U.S.C. § 284, but in no event less than a reasonable royalty, together with interest and costs.

47.    Defendants have also induced infringement of one or more claims of the '207 Patent in violation of 35 U.S.C. § 271(b). On information and belief, Defendants have actively induced U.S. Gulf Coast refineries—including, without limitation, refineries located in Beaumont, Texas and Port Arthur, Texas—to import, purchase, and use AWB produced by the patented process, knowing that such importation, purchase, and use constitutes infringement. Defendants' inducing acts include, among other things: (a) entering into long-term pipeline transportation contracts on the Flanagan South and Seaway Pipeline Systems specifically designed to deliver the product of the patented process to U.S. Gulf Coast terminals and refineries; (b) maintaining dedicated crude oil storage tanks and pipeline capacity in Beaumont, Texas for the express purpose of facilitating delivery of the infringing product to U.S. purchasers; (c) entering into offtake agreements and supply contracts with U.S. refineries for the purchase of AWB; (d) providing technical product specifications, blend quality certifications, and marketing materials to U.S. purchasers identifying AWB as derived from Defendants' Christina Lake SAGD operations and encouraging their purchase and use of the infringing product; and (e) actively participating in and directing the logistics chain that delivers the product of the patented process into U.S. commerce. Defendants have had actual knowledge of the '207 Patent at least as of service of this Complaint and, on information and belief, since at least January 2017 through previous litigation and communications with CSL, prosecution of their own patents in light of the Asserted Patents, and CSL's industry broadcast. Despite this knowledge, Defendants possess the specific intent that U.S. refineries and

14

purchasers import, use, offer to sell, and sell the product of the patented process within the United States, as evidenced by Defendants' deliberate establishment and maintenance of a dedicated importation infrastructure and contractual framework designed to place the product of the patented process into U.S. commerce.

48. Defendants' infringement of the '207 Patent has been and continues to be willful and deliberate. Defendants have had actual knowledge of the '207 Patent since at least January 2017, when CSL broadcast an email to the industry (including Defendants) referencing issuance of the '207 Patent. Defendants' knowledge is further confirmed by the Canadian litigation (Case No. T-1069-14), filed in 2014, involving a related Canadian patent in the same patent family, through which Defendants became intimately familiar with the Swist patent portfolio. Despite this knowledge, Defendants have continued to perform the patented process and import the resulting product into the United States without authorization or license. Defendants' own patent (U.S. Patent No. 10,145,226) further demonstrates their knowledge and understanding of the claimed inventions, as MEG obtained that patent by arguing—like Swist—that its method was distinct from prior art because it involved infill well activation prior to steam chamber merger. CSL is entitled to enhanced damages of up to three times the amount assessed pursuant to 35 U.S.C. § 284, and to attorneys' fees and costs under 35 U.S.C. § 285.

49. Unless Defendants are enjoined by this Court, CSL will suffer irreparable harm for which there is no adequate remedy at law. Defendants' continued infringement deprives CSL of its constitutionally grounded right to exclude others from practicing the inventions claimed in the '207 Patent, causing ongoing injury that monetary damages alone cannot fully compensate. Among other things, Defendants' infringement undermines CSL's ability to control the terms and scope of licenses to its patented technology and diminishes the value of the '207 Patent. There is no

adequate remedy under the Patent Act for Defendants' infringement on account of importation of the product made by the patented process. CSL is therefore entitled to preliminary and permanent injunctive relief pursuant to 35 U.S.C. § 283.

## COUNT II
## INFRINGEMENT OF THE '912 PATENT

50.     CSL realleges and incorporates herein the preceding allegations of this Complaint as if fully set forth herein.

51.     The '912 Patent generally describes a method for mobilizing and extracting oil from oil sand reservoirs using SAGD well pairs in combination with an infill well drilled between the well pairs prior to steam chamber merging, wherein fluids injected into the well pairs and the infill well substantially alter the oil sands composition such that hydrocarbons are transformed into a mobile state, allowing their extraction from the reservoir.

52.     The '912 Patent is valid, enforceable, and directed to patent-eligible subject matter under 35 U.S.C. § 101. The claims of the '912 Patent recite specific, concrete methods of producing oil from oil sand reservoirs that are tied to particular physical processes and yield tangible results.

53.     CSL is the owner of the '912 Patent and has the sole and exclusive right to enforce the '912 Patent and to recover damages for past and ongoing infringement.

54.     By way of non-limiting example set forth below, Defendants' SAGD operations at the Christina Lake Project infringe at least Claim 1 of the '912 Patent. The description is based on publicly available information, including Defendants' website, regulatory filings, and patent disclosures. A detailed claim chart mapping each element of the asserted claims to Defendants' infringing operations is attached as **Exhibit E**. CSL reserves the right to modify this description,

including, for example, based on information about Defendants' operations that it obtains during discovery.

55.    Claim 1 of the '912 Patent recites:

*A method of mobilizing and extracting oil from an oil sand reservoir comprising:*

*first and second well pairs separated by a predetermined separation, each well pair comprising: a first well within the oil sand reservoir, and a second well within the oil sand reservoir at a predetermined vertical offset to the first well, the second well being substantially parallel to the first well and the second well being at a predetermined lateral offset to the first well;*

*prior to any production, operating the first and second well pairs as steam assisted gravity drainage (SAGD) well pairs by selectively injecting a first fluid into at least the first well of each well pair according to a first predetermined schedule to create first zones of increased mobility within the oil sand reservoir around the first well of each well pair;*

*drilling an infill well within the oil sand reservoir at a predetermined location between the first and second well pairs prior to adjacent steam chamber merging of the first and second well pairs;*

*generating a second zone of increased mobility between the first and second well pairs by injecting a second fluid into the infill well according to a second predetermined schedule to establish thermal communication between the infill well and the first zones of each well pair; and,*

*the second predetermined schedule also comprising converting the infill well for extracting mobilized reservoir fluids from the oil sand reservoir via the infill well while continuing to operate the first and second well pairs according to the first predetermined schedule;*

*the fluid injected into the first well pair, the second well pair, and the infill well substantially altering the oil sands composition such that hydrocarbons contained in the oil sands composition are transformed into a mobile state allowing the hydrocarbons to be extracted from the oil sands reservoir.*

56.    On information and belief, Defendants have infringed and continue to infringe one or more claims of the '912 Patent under 35 U.S.C. § 271(g) by importing into the United States, or offering to sell, selling, or using within the United States, a product (bitumen/CDB/AWB) that is made by a process patented in the United States, without the authorization of CSL. Specifically,

Defendants perform the patented SAGD process—including the use of infill wells activated prior to steam chamber merger—at their Christina Lake Project in Alberta, Canada, and the resulting product (bitumen blended as AWB) is imported into the United States via pipeline for sale to and use by USGC refineries.

57. The AWB and CDB imported by Defendants into the United States is not materially changed by subsequent processes before its importation. The blending of bitumen with diluent for the purpose of pipeline transportation does not constitute a material change within the meaning of 35 U.S.C. § 271(g). The bitumen component of AWB is the essential, commercially valuable product of Defendants' patented extraction process, and blending with diluent is merely a necessary transportation step that does not alter the fundamental character or commercial identity of the product.

58. The product made by the patented process does not become a trivial and nonessential component of another product.

59. On information and belief, Defendants have also infringed and continues to infringe one or more claims of the '912 Patent under 35 U.S.C. § 271(g) by importing into the United States, offering to sell, selling, and/or using within the United States products (bitumen/CDB/AWB) made by the patented process. Defendants' acts of importation, offers to sell, sales, and use of the product made by the patented process within the United States constitute direct infringement under § 271(g).

60. By engaging in the conduct described herein, Defendants have caused injury to CSL, and CSL has been damaged and continues to be damaged as a result thereof. Defendants are liable to CSL for infringement of the '912 Patent pursuant to 35 U.S.C. § 271.

61.    CSL has suffered and continues to suffer monetary damages as a result of Defendants' infringement of the '912 Patent and is entitled to a monetary judgment in an amount adequate to compensate CSL for Defendants' infringement pursuant to 35 U.S.C. § 284, but in no event less than a reasonable royalty, together with interest and costs.

62.    Defendants have also induced infringement of one or more claims of the '912 Patent in violation of 35 U.S.C. § 271(b). On information and belief, Defendants have actively induced U.S. Gulf Coast refineries—including, without limitation, refineries located in Beaumont, Texas and Port Arthur, Texas—to import, purchase, and use AWB produced by the patented process, knowing that such importation, purchase, and use constitutes infringement. Defendants' inducing acts include, among other things: (a) entering into long-term pipeline transportation contracts on the Flanagan South and Seaway Pipeline Systems specifically designed to deliver the product of the patented process to U.S. Gulf Coast terminals and refineries; (b) maintaining dedicated crude oil storage tanks and pipeline capacity in Beaumont, Texas for the express purpose of facilitating delivery of the infringing product to U.S. purchasers; (c) entering into offtake agreements and supply contracts with U.S. refineries for the purchase of AWB; (d) providing technical product specifications, blend quality certifications, and marketing materials to U.S. purchasers identifying AWB as derived from Defendants' Christina Lake SAGD operations and encouraging their purchase and use of the infringing product; and (e) actively participating in and directing the logistics chain that delivers the product of the patented process into U.S. commerce. Defendants have had actual knowledge of the '912 Patent at least as of service of this Complaint and, on information and belief, since at least 2019 when the '912 Patent issued and through more than eight years of ongoing communications between the parties and their counsel regarding the Swist patent portfolio. Despite this knowledge, Defendants possess the specific intent that U.S. refineries

19

and purchasers import, use, offer to sell, and sell the product of the patented process within the United States, as evidenced by Defendants' deliberate establishment and maintenance of a dedicated importation infrastructure and contractual framework designed to place the product of the patented process into U.S. commerce.

63.     Defendants' infringement of the '912 Patent has been and continues to be willful and deliberate. Defendants have had actual knowledge of the Swist patent portfolio—including the then pending continuation applications that matured into the '912 Patent—since at least 2014, through the Canadian litigation (Case No. T-1069-14) involving a related Canadian patent in the same patent family. Defendants have been fully aware of CSL's U.S. patent rights through more than eight years of ongoing communications between the parties and their counsel. Despite this knowledge, Defendants have continued to perform the patented process and import the resulting product into the United States without authorization or license. CSL is entitled to enhanced damages of up to three times the amount assessed pursuant to 35 U.S.C. § 284, and to attorneys' fees and costs under 35 U.S.C. § 285.

64.     Unless Defendants are enjoined by this Court, CSL will suffer irreparable harm for which there is no adequate remedy at law. Defendants' continued infringement deprives CSL of its constitutionally grounded right to exclude others from practicing the inventions claimed in the '912 Patent, causing ongoing injury that monetary damages alone cannot fully compensate. Among other things, Defendants' infringement undermines CSL's ability to control the terms and scope of licenses to its patented technology and diminishes the value of the '912 Patent. There is no adequate remedy under the Patent Act for Defendants' infringement on account of importation of the product made by the patented process. CSL is therefore entitled to preliminary and permanent injunctive relief pursuant to 35 U.S.C. § 283.

## COUNT III
## INFRINGEMENT OF THE '655 PATENT

65.    CSL realleges and incorporates herein the preceding allegations of this Complaint as if fully set forth herein.

66.    The '655 Patent generally describes a method for altering and producing oil from oil sand reservoirs using SAGD well pairs with an infill well, wherein fluids are injected according to predetermined schedules to establish thermal communication and substantially alter the oil sand's composition, transforming hydrocarbons into mobilized elements that can be extracted from the reservoir while the SAGD well pairs continue to operate.

67.    The '655 Patent is valid, enforceable, and directed to patent-eligible subject matter under 35 U.S.C. § 101. The claims of the '655 Patent recite specific, concrete methods of producing oil from oil sand reservoirs that are tied to particular physical processes and yield tangible results.

68.    CSL is the owner of the '655 Patent and has the sole and exclusive right to enforce the '655 Patent and to recover damages for past and ongoing infringement.

69.    By way of non-limiting example set forth below, Defendants' SAGD operations at the Christina Lake Project infringe at least Claim 1 of the '655 Patent. The description is based on publicly available information, including Defendants' website, regulatory filings, and patent disclosures. A detailed claim chart mapping each element of the asserted claims to Defendants' infringing operations is attached as **Exhibit F**. CSL reserves the right to modify this description, including, for example, based on information about Defendants' operations that it obtains during discovery.

70.    Claim 1 of the '655 Patent recites:

*A method of altering and producing oil from an oil sand reservoir comprising:*

21

*first and second well pairs separated by a predetermined separation, each well pair comprising: a first well within the oil sand reservoir, and a second well within the oil sand reservoir at a predetermined vertical offset to the first well, the second well being substantially parallel to the first well, and the second well being at a predetermined lateral offset to the first well, the method comprising:*

*drilling an infill well within the oil sand reservoir at a predetermined location between the first and second well pairs;*

*prior to production, operating the first and second well pairs as steam assisted gravity drainage (SAGD) well pairs by selectively injecting a first fluid into at least the first well of each well pair according to a first predetermined schedule to create first zones of increased mobility within the oil sand reservoir around the first well of each well pair;*

*generating a second zone of increased mobility between the first and second well pairs by injecting a second fluid into the infill well according to a second predetermined schedule to establish thermal communication between the second zone and the first zones of each well pair;*

*the second predetermined schedule also comprising converting the infill well for extracting mobilized hydrocarbons from the oil sand reservoir via the infill well while continuing to operate the first and second well pairs according to the first predetermined schedule;*

*the fluid injected into the first well pair, the second well pair, and the infill well substantially altering the oil sand's composition such that hydrocarbons contained in the oil sand's composition are transformed into mobilized elements allowing the hydrocarbons to be extracted from the oil sands reservoir.*

71.    On information and belief, Defendants have infringed and continue to infringe one or more claims of the '655 Patent under 35 U.S.C. § 271(g) by importing into the United States, or offering to sell, selling, or using within the United States, a product (bitumen/CDB/AWB) that is made by a process patented in the United States, without the authorization of CSL. Specifically, Defendants perform the patented SAGD process—including the use of infill wells activated prior to steam chamber merger—at their Christina Lake Project in Alberta, Canada, and the resulting product (bitumen blended as AWB) is imported into the United States via pipeline for sale to and use by USGC refineries.

72.    The AWB and CDB imported by Defendants into the United States is not materially changed by subsequent processes before its importation. The blending of bitumen with diluent for the purpose of pipeline transportation does not constitute a material change within the meaning of 35 U.S.C. § 271(g). The bitumen component of AWB is the essential, commercially valuable product of Defendants' patented extraction process, and blending with diluent is merely a necessary transportation step that does not alter the fundamental character or commercial identity of the product.

73.    The product made by the patented process does not become a trivial and nonessential component of another product.

74.    On information and belief, Defendants have also infringed and continue to infringe one or more claims of the '655 Patent under 35 U.S.C. § 271(g) by importing into the United States, offering to sell, selling, and/or using within the United States products (bitumen/CDB/AWB) made by the patented process. Defendants' acts of importation, offers to sell, sales, and use of the product made by the patented process within the United States constitute direct infringement under § 271(g).

75.    By engaging in the conduct described herein, Defendants have caused injury to CSL, and CSL has been damaged and continues to be damaged as a result thereof. Defendants are liable to CSL for infringement of the '655 Patent pursuant to 35 U.S.C. § 271.

76.    CSL has suffered and continues to suffer monetary damages as a result of Defendants' infringement of the '655 Patent and is entitled to a monetary judgment in an amount adequate to compensate CSL for Defendants' infringement pursuant to 35 U.S.C. § 284, but in no event less than a reasonable royalty, together with interest and costs.

77.    Defendants have also induced infringement of one or more claims of the '655 Patent in violation of 35 U.S.C. § 271(b). On information and belief, Defendants have actively induced U.S. Gulf Coast refineries—including, without limitation, refineries located in Beaumont, Texas and Port Arthur, Texas—to import, purchase, and use AWB produced by the patented process, knowing that such importation, purchase, and use constitutes infringement. Defendants' inducing acts include, among other things: (a) entering into long-term pipeline transportation contracts on the Flanagan South and Seaway Pipeline Systems specifically designed to deliver the product of the patented process to U.S. Gulf Coast terminals and refineries; (b) maintaining dedicated crude oil storage tanks and pipeline capacity in Beaumont, Texas for the express purpose of facilitating delivery of the infringing product to U.S. purchasers; (c) entering into offtake agreements and supply contracts with U.S. refineries for the purchase of AWB; (d) providing technical product specifications, blend quality certifications, and marketing materials to U.S. purchasers identifying AWB as derived from Defendants' Christina Lake SAGD operations and encouraging their purchase and use of the infringing product; and (e) actively participating in and directing the logistics chain that delivers the product of the patented process into U.S. commerce. Defendants have had actual knowledge of the '655 Patent at least as of service of this Complaint and, on information and belief, since at least February 2021 when the '655 Patent issued and through more than eight years of ongoing communications between the parties and their counsel regarding the Swist patent portfolio, including CSL's public announcements of each patent issuance on its website at www.crudesolutions.com. Despite this knowledge, Defendants possess the specific intent that U.S. refineries and purchasers import, use, offer to sell, and sell the product of the patented process within the United States, as evidenced by Defendants' deliberate establishment

24

and maintenance of a dedicated importation infrastructure and contractual framework designed to place the product of the patented process into U.S. commerce.

78.    Defendants' infringement of the '655 Patent has been and continues to be willful and deliberate. Defendants have had actual knowledge of the Swist patent portfolio—including the continuation applications that matured into the '655 Patent—since at least 2014, through the Canadian litigation (Case No. T-1069-14) involving a related Canadian patent in the same patent family. Defendants have been fully aware of CSL's U.S. patent rights through more than eight years of ongoing communications between the parties and their counsel. Despite this knowledge, Defendants have continued to perform the patented process and import the resulting product into the United States without authorization or license. CSL is entitled to enhanced damages of up to three times the amount assessed pursuant to 35 U.S.C. § 284, and to attorneys' fees and costs under 35 U.S.C. § 285.

79.    Unless Defendants are enjoined by this Court, CSL will suffer irreparable harm for which there is no adequate remedy at law. Defendants' continued infringement deprives CSL of its constitutionally grounded right to exclude others from practicing the inventions claimed in the '655 Patent, causing ongoing injury that monetary damages alone cannot fully compensate. Among other things, Defendants' infringement undermines CSL's ability to control the terms and scope of licenses to its patented technology and diminishes the value of the '655 Patent. There is no adequate remedy under the Patent Act for Defendants' infringement on account of importation of the product made by the patented process. CSL is therefore entitled to preliminary and permanent injunctive relief pursuant to 35 U.S.C. § 283

## **DEMAND FOR JURY TRIAL**

80.    Pursuant to Fed. R. Civ. P. 38(b), Plaintiff respectfully requests a trial by jury on all issues triable by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Crude Solutions Ltd. respectfully requests that this Court enter judgment in its favor and against Defendants, granting the following relief:

a.    that this Court declare that Defendants have infringed and continue to infringe one or more claims of the Asserted Patents under 35 U.S.C. § 271, including under §§ 271(b) and 271(g);

b.    that this Court enter a permanent injunction pursuant to 35 U.S.C. § 283 prohibiting Defendants and their affiliates from further acts of infringement, including prohibiting Defendants from importing into the United States, offering to sell, selling, or using within the United States any product made by a process that infringes the Asserted Patents;

c.    that this Court award CSL all damages adequate to compensate for Defendants' infringement, including, where appropriate, enhanced damages of up to three times the amount found or assessed by the Court pursuant to 35 U.S.C. § 284, together with pre- and post-judgment interest and costs;

d.    that this Court award damages for future infringement up to the expiry of the Asserted Patents;

e.    that this Court award pre- and post-judgment interest on such damages to CSL;

f.    that that this Court declare this an exceptional case and order Defendants to pay CSL its reasonable attorneys' fees and costs according to 35 U.S.C. § 285;

g.      that this Court award an ongoing royalty and supplemental damages to compensate CSL for any continuing infringement by Defendants not otherwise included in the jury's verdict; and

h.      that this Court award any additional relief to CSL that this Court deems just and proper.

Dated: June 8, 2026                              Respectfully Submitted,

                                                 /s/  Greg Love

                                                 Greg Love
                                                 Texas Bar No. 24036997
                                                 glove@cjsjlaw.com
                                                 **CHERRY JOHNSON SIEGMUND JAMES PC**
                                                 104 E. Houston St., Suite 115
                                                 Marshall, Texas 75670
                                                 Tel: (903) 212-4444
                                                 Fax: (866) 627-3509

                                                 Mark D. Siegmund
                                                 Texas Bar No. 24117055
                                                 msiegmund@cjsjlaw.com
                                                 **CHERRY JOHNSON SIEGMUND JAMES PC**
                                                 7901 Fish Pond Road, 2nd Floor
                                                 Waco, TX 76710
                                                 Telephone: (254) 732-2242
                                                 Facsimile: (866) 627-3509

                                                 Brett Mangrum
                                                 Texas Bar No. 24065671
                                                 bmangrum@cjsjlaw.com
                                                 Scott Maynard
                                                 California Bar No. 224932
                                                 smaynard@cjsjlaw.com
                                                 Alejandro Echeverria
                                                 California Bar No. 355375
                                                 aecheverria@cjsjlaw.com
                                                 **CHERRY JOHNSON SIEGMUND JAMES PC**

27

One Glen Lakes Tower
8140 Walnut Hill Lane, Suite 105
Dallas, Texas 75231
Telephone: (254) 732-2242
Facsimile: (866) 627-3509

***Attorneys for Plaintiff***
***Crude Solutions Ltd.***

28